[Crim. No. 15159. Second Dist., Div. One. Dec. 24, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT LEE ROSS, Defendant and Appellant.

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Lola M. McAlpin, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was charged with possession of heroin (§ 11500, Health & Saf. Code) and four prior felony convictions—two violations, Marijuana Tax Act, possession (1953) and two failure to register as narcotic violator (1957, 1961), all federal narcotic violations. The cause was submitted on the transcript of the testimony taken at the preliminary hearing. The court found him guilty as charged and two prior felony convictions to be true—violation, Marijuana Act, possession (1953) and failure to register as narcotic violator (1957). He appeals from the judgment.

Investigating a grand theft committed on October 7, 1961, Officer Smith obtained information that the goods stolen had been sold to Newman's Junk Yard; he went there and talked with Mr. Cohen who told him that he had purchased them as metal from two male Negroes using a 1959 Chevrolet, license number JDF 672, describing one (defendant) as a male Negro, 35 to 40, 5 feet 5 to 5 feet 7, 115 pounds, a large mustache, a goatee and wearing glasses. Officer Smith followed up the information and traced the car to an address on East 35th Street where he determined it was parked. He had additional information from another person that defendant had been using the vehicle and that he fit the description of one of the suspects given by Cohen. Officer Smith and his partner went to the 35th Street address around 2:50 a.m. on November 3, 1967; they observed defendant walk down the

street and into the residence; Smith immediately went to the back door while his partner went to the front; in a short time his partner brought defendant out of the building into a driveway area. Officer Smith started a pat-down search for weapons. He felt something in defendant's right front pocket and started to put his hand in it; defendant had also started for the same pocket. He told defendant to take his hand away and he did. The officer tried again and put his hand in defendant's right front pocket as defendant also attempted to do so. Finally, Officer Smith handcuffed him. As he went back into the right front pocket again defendant reached around and put his left hand into his left front pocket; defendant withdrew his hand in a clenched fist and Officer Smith ordered, "Drop what you have in your hand." Defendant opened it and two small balloons containing heroin dropped to the driveway; he was then arrested and advised of his constitutional rights; he was asked if he understood them and he said that he did. Upon a search of "defendant's room that he was occupying in the house," the officers found hypodermic needles and two eyedroppers. In the police car defendant was asked by Smith what was in the balloons; defendant said, "Shit"; the officer asked what he meant by that and defendant answered "Heroin"; asked how long he had been using, defendant replied, "Twenty-five."

The sole issue relates to the representation given to defendant by his trial counsel. Appellant contends that it was improper for his counsel to submit the cause on the preliminary hearing transcript because any objections he might have had to the admission of evidence were waived by his failure to raise them at the trial; and the transcript reflected the actual or potential existence of several legal defenses. He speculates that trial counsel "could" have objected to the introduction of any evidence on the ground of unlawful search and seizure, to the information received from Cohen as merely information from an unreliable informant not sufficient upon which to base probable cause for his arrest, to the introduction of evidence on the ground that it was obtained in violation of section 844, Penal Code, and he "could" have subpoenaed Officer Smith and questioned him further about the entry, and to his admission that the balloons contained heroin and he had been using heroin for some time, on the ground that he was not properly advised of his constitutional rights.

In retrospect it is easy, especially where the cause has been submitted to the trial court on the transcript of the testimony.

taken at the preliminary hearing, to level criticism at defense counsel by speculating what he "could" have done during a trial. What appellant's counsel conveniently ignores is the situation with which trial counsel was faced at the time of the submission. He was confronted not only with what defendant had told him about his involvement in the case (inasmuch as one can expect effective legal representation only if he makes full disclosure of all the facts to his attorney, we are entitled to assume that defendant discharged his part of the obligation and fully disclosed the truth to his counsel) but the damaging testimony of Officer Smith clearly establishing his possession of heroin and four alleged prior felony convictions involving narcotics.

 "Defendant has the burden . . . of establishing his allegation of inadequate representation 'not as a matter of speculation but as a demonstrable reality.'" (*People* v. *Reeves,* 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35].)

 Appellant has not sustained his burden. Further, the record fails to show as it did in *People* v. *Ibarra,* 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487], relied upon by appellant, that he did not have diligent and reasonably competent representation by trial counsel nor does it show that he availed himself of the privilege of complaining at the trial level that his counsel was not adequately representing him. (*People* v. *Monk,* 56 Cal.2d 288, 299 [14 Cal.Rptr. 633, 363 P.2d 865].) The explanation for this is found in the factual complexion of the case which demonstrates that counsel was in a position to exercise his professional judgment, did so and adopted such strategy and tactics as he deemed to be in the best interest of his client, and that defendant's dissatisfaction with his conduct of the case did not develop until on appeal.

Actually appellant's complaint that his counsel should not have stipulated to submission of the cause on the preliminary hearing transcript consists of an attack on the competency and effectiveness of trial counsel in the sense of strategy, tactics and judgment exercised by him during his conduct and control of the case. He claims that because of the submission he was deprived of defenses that his counsel "could" have raised on a trial. Defendant was represented at the trial by a deputy public defender. His counsel was the "manager of the lawsuit" (*Wilson* v. *Gray,* 345 F.2d 282, 290) in control of the case and had the authority and duty to determine all questions of strategy and trial tactics; and it was within the scope of his authority and he had the right to

submit the cause on the preliminary transcript. (*People* v. *Foster*, 67 Cal.2d 604, 606 [63 Cal.Rptr. 288, 432 P.2d 976].) The choice of whether to submit the cause is inherently a matter of trial strategy. At the preliminary hearing defense counsel was also a public defender. ▮ He had the opportunity to and did extensively cross-examine Officer Smith, make various pertinent objections and move to strike the statements made by defendant to the police; "and any objection to the use of the preliminary hearing transcript at the trial was waived when defense counsel, in defendant's presence and without objection by him, joined in the stipulation regarding the use of that transcript. [Citations.]" (*People* v. *Foster*, 67 Cal.2d 604, 606 [63 Cal.Rptr. 288, 432 P.2d 976]; *People* v. *Cruz*, 244 Cal.App.2d 137, 140 [53 Cal.Rptr. 354].)

▮ This undoubtedly was the wisest course for counsel to take. From what he knew of the circumstances, including what his own client had told him (*People* v. *Garrison*, 246 Cal.App.2d 343, 351 [54 Cal.Rptr. 731]), counsel was in a position to exercise his professional judgment and he did so deciding that the People's case as set up in the "cold" transcript would appear to the trial court much less damaging than if it were established anew at the trial in which all of the incriminating details would unfold. (*People* v. *Comstock*, 147 Cal.App.2d 287, 299 [305 P.2d 228].) That the strategy may have been unrewarding is no ground for the conclusion that counsel was incompetent or lacked diligence in representing his client (*People* v. *Robillard*, 55 Cal.2d 88, 96 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086]; *People* v. *Reeves*, 64 Cal.2d 766, 773 [51 Cal.Rptr. 691, 415 P.2d 35]); and his decision to stipulate to the submission of the cause, forego further cross-examination of Officer Smith and refrain from raising the objections appellant claims he "could" have raised fails to afford a basis for the presumption that appellant was denied effective aid of counsel. Appellant does not complain that he was denied the right to testify nor does he claim he had a factual defense he was prevented from offering.

▮ Ordinarily the tactical decisions of trial counsel will not be reviewed with the hindsight of an appellate court and except in rare cases it should not attempt to second-guess counsel. (*People* v. *Brooks*, 64 Cal.2d 130, 139-140 [48 Cal. Rptr. 879, 410 P.2d 383]; *People* v. *Reeves*, 64 Cal.2d 766, 772-773 [51 Cal.Rptr. 691, 415 P.2d 35].)

As to the objections trial counsel "could" have made at a trial, an examination of the record confirms his decision that

their chances of being sustained were slight. Officer Smith was investigating a grand theft on official information, part of which was that the stolen goods had been sold as metal to a junk yard; this was corroborated by Cohen who also gave a description of those who had brought in the metal, and their automobile; on subsequent information from an entirely different source the officer was able to trace the vehicle to and learned that it was parked at, a certain address, and from another informant learned that defendant, who fit Cohen's description of one of the men, was using the vehicle. On the basis of the foregoing, the officer went to the address where the car was parked and saw defendant go into the residence. The identification of defendant as one of those described by Cohen was made not by Cohen but by someone else; moreover substantial information from other sources and the officer's observations corroborated the information given by Cohen.

█ Whether the officers had probable cause to make the arrest is to be determined not from the sufficiency of each independent single item of information in their possession at that time, but by the overall or total sufficiency of all of the reliable information they then had. (*People* v. *Fritz,* 253 Cal. App.2d 7, 12-13 [61 Cal.Rptr. 247].) █ Applying these standards we can only conclude that the officers had reasonable cause for the arrest of defendant on the theft charge.

Beyond mere speculation appellant has pointed up no facts which could have been raised on a further cross-examination of Officer Smith to show a violation of section 844, Penal Code. Actually, the preliminary hearing transcript shows that Officer Smith knew nothing about the entry into the residence, and he so testified. He said that he was not present when his partner entered the premises; he went to the rear and his partner went to the front where he entered; he knew nothing about the entry except what he was told. Thus, to offer further proof it would have been necessary for defendant to have called Smith's partner as his own witness. The record as it stands shows no violation of section 844, Penal Code. In discussing the case with his client, counsel may well have discovered one of many factors confirming the validity of the entry, i.e., that defendant himself admitted the officer or that the officer entered with defendant's consent.

█ At the preliminary hearing defense counsel objected to the admissions of defendant on the ground that he had not been adequately advised of his constitutional rights. The objection was properly overruled. Before defendant made any

statement the officer advised him of his constitutional rights in accord with the principles laid down in *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R. 3d 974].[1]

The critical weakness of appellant's position is that the public defender was representing a client who simply had no defense to a clear violation of the law. It is not easy for counsel to find tactics effective to protect such a client.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 19, 1969.

---

[1]On direct examination of Officer Smith the prosecutor asked and Smith answered the following:

"Q Was this conversation freely and voluntarily made?

"A Yes, it was.

"Q How long after the arrest was it made, the conversation?

"A 15—20 minutes, something like that.

"Q Was the defendant advised of his constitutional rights?

"A Yes, he was.

"Q Specifically, what was he told that his constitutional rights were?

"A I advised the defendant that he had a right to have an attorney present during the conversation or he could talk to an attorney before we talked to him. If he didn't have sufficient funds to hire an attorney, one would be provided free of charge.

"I asked if he understood this. He said, yes.

"I advised him that he had a right to remain silent and say nothing. If he did say anything, it could be used later in court.

"I asked if he understood. He said that he did."